Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S. App. D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 18, 2005          Decided March 11, 2005

No. 03-1452

TENNESSEE GAS PIPELINE COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PSEG ENERGY RESOURCES & TRADE LLC, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Howard L. Nelson* argued the cause and filed the briefs for petitioner.  *Janice A. Alperin* entered an appearance.

*Dennis Lane*, Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent.  With him on the brief was *Cynthia A. Marlette*, General Counsel.  *Lona T. Perry*, Attorney, entered an appearance.

Before: EDWARDS and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Tennessee Gas Pipeline Company petitions for review of three Orders of the Federal Energy Regulatory Commission requiring revision of its tariff to provide that shippers are not responsible for full reservation charges after service is suspended. In effect, Tennessee challenges the propriety of the Commission's determination that, as a matter of policy, it will not allow pipelines to collect full reservation charges from shippers whose service has been suspended. Because the Commission's policy is not arbitrary or capricious or contrary to law, we deny the petition.

## I.

On August 16, 2002, Tennessee made a filing under section 4 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717c (2000), to amend its tariff. Among other revisions, it sought to clarify the credit evaluation provisions by adding the following provision: "Regardless of whether Shipper is insolvent, has lost its creditworthiness status or does not desire to continue service with Transporter, Shipper shall continue to be liable for all charges due under its service agreement and associated rate schedule." Following a technical conference and public comment, the Commission conditionally accepted Tennessee's creditworthiness proposal, subject to Tennessee filing revised tariff sheets incorporating certain modifications. *Tenn. Gas Pipeline Co.*, 102 F.E.R.C. ¶ 61,075 (Jan. 29, 2003) ("*First Order*"). The Commission stated:

> While Tennessee's tariff does not give it the right to collect charges for service after a contract is terminated, it is unclear what happens when a contract is suspended.

3

> When service is suspended, a shipper's service is stopped and that shipper should not be held responsible for future charges. Certainly the shipper must pay Tennessee for service up to the date service was suspended, but they [sic] are not responsible for charges after Tennessee suspended service. Tennessee is required to revise its tariff to provide that shipper's [sic] are not responsible for charges after service is suspended.

*Id*. at 61,195.

Tennessee sought rehearing on the ground that the Commission failed to meet its burden under section 5 of the NGA, 15 U.S.C. § 717d, to show that Tennessee's then-current tariff language was unjust or unreasonable and that the Commission's proposed change was not unjust and unreasonable. Tennessee argued that "[r]eserving the firm capacity without payment of the reservation charge is at complete odds not only with the fundamental premise of a firm transportation contract, but with the whole Part 284 regulatory scheme." Request for Rehearing, at 5 (Feb. 28, 2003). The Commission denied rehearing, affirming that Tennessee shippers should not be billed for reservation charges after service is suspended. *Tenn. Gas Pipeline Co.*, 103 F.E.R.C. ¶ 61,275 (June 4, 2003) ("*Second Order*"). The Commission explained: "If the pipeline elects to suspend service, it cannot bill for service that it does not offer to provide, but the pipeline would be able to sue the shipper for the consequential, unmitigated damages caused by its contractual breach." *Id.* at 62,066. The Commission noted that it "has affirmed its policy in two recent order[s]," *id*. at 62,066 n.70 (citing *PG&E Gas Transmission, Northwest Corp.,* 103 F.E.R.C. ¶ 61,137 (2003); *Gulf South Pipeline Co.*, 103 F.E.R.C. ¶ 61,129 ( 2003)). While ruling that section 5 of the NGA was inapplicable because "Tennessee points to no current tariff provision that permits it

to bill during service suspension, which is consistent with Commission policy," *id.* at 62,067, and requiring Tennessee's tariff, in order to ensure that tariff silence would not be misunderstood, specifically to reflect "the status quo" that Tennessee has no authority to bill shippers for service during suspension, *id.*, the Commission also ruled that "for the reasons discussed," *see id.* at 62,066, billing shippers during suspension is unjust and unreasonable under section 5 of the NGA, *id.* at 62,067. The Commission, in relevant part, denied Tennessee's further request for rehearing. *Tenn. Gas Pipeline Co.*, 105 F.E.R.C. ¶ 61,120 (Oct. 24, 2003) ("*Third Order*"). Tennessee petitions for review of the three Orders.

## II.

The court may set aside the Commission's orders only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). "[T]he Commission must be able to demonstrate that it has 'made a reasoned decision based upon substantial evidence in the record.'" *Northern States Power Co. (Minnesota) v. FERC,* 30 F.3d 177, 180 (D.C. Cir. 1994) (quoting *Town of Norwood v. FERC*, 962 F.2d 20, 22 (D.C. Cir. 1992)). The court's review of Commission policy is "highly deferential" because "'the breadth of agency discretion is, if anything, at [its] zenith when the action assailed relates primarily . . . to the fashioning of policies, remedies and sanctions.'" *Columbia Gas Transmission Corp. v. FERC,* 750 F.2d 105, 109 (D.C. Cir. 1984) (alteration in original) (quoting *Niagara Mohawk Power Corp. v. FPC,* 379 F.2d 153, 159 (D.C. Cir. 1967)); *see also Northern Mun. Distribs. Group v. FERC,* 165 F.3d 935, 941 (D.C. Cir. 1999).

Because the Commission acknowledged in the *Second Order,* 103 F.E.R.C. at 62,066 n.70, that it had established a policy in the *First Order*, the court need not examine

Tennessee's challenge to the Commission's determination that Tennessee's pre-existing tariff did not allow it to collect full reservation charges from a shipper whose service had been suspended, nor whether the Commission was required to proceed under sections 4 or 5 of the NGA in ordering Tennessee to modify its tariff. Even assuming the Commission has the burden of proof, as it would under section 5, we hold that the Commission's policy is reasonable and entitled to deference.

Reservation charges are the portion of a two-part rate (with usage charges being the other component) through which a pipeline may collect fixed costs attributable to firm transportation service. *See* 18 C.F.R. § 284.7(e) (2004). According to Tennessee, the Commission generally requires pipelines to utilize a straight fixed variable ("SFV") rate design under which all fixed costs are included in the reservation charge and all variable costs are included in the usage charge. "A firm transportation customer must pay the reservation charge on the capacity it reserves whether or not it uses the capacity. It pays the usage charge only to the extent it actually uses its reserved capacity." *Altamont Gas Transmission Co.*, 69 F.E.R.C. ¶ 61,034, 61,134 (1994). "Therefore, under SFV, the pipeline's fixed costs are at risk only to the extent it has unreserved capacity." *Id.* However, Tennessee states that its rates vary from SFV because twelve percent of its transmission cost of service is recovered in the usage charge. *See Tenn. Gas Pipeline Co.*, 77 F.E.R.C. ¶ 61,083, 61,355-59 (1996). Tennessee therefore maintains that during a suspension it will lose even more revenues than a pipeline whose rates are based on a pure SFV rate design.

During suspension, a shipper cannot transport gas on the pipeline although it remains entitled to the contracted capacity. *Northern Natural Gas Co.*, 103 F.E.R.C. ¶ 61,276, 62,076 (2003). Under Tennessee's tariff, once a shipper loses its

creditworthiness status, it may continue to use its reserved capacity so long as it provides at least one of four assurances to the pipeline, such as an irrevocable letter of credit verifying the shipper's creditworthiness or a prepayment for service. *See* Tennessee Tariff § 4.4; *First Order*, 102 F.E.R.C. at 61,193. Consequently, the key difference between the entitlements of the suspended shipper and unsuspended shipper is that service for the suspended shipper is subject to the shipper in some way filling whatever apparent gap in creditworthiness caused the suspension, sometimes including making an advance payment to the pipeline in order to use reserved capacity.

Tennessee's position is that it should be allowed to collect the reservation charge during a shipper's suspension because the pipeline must reserve capacity, which will be available to the shipper when it cures its contractual default. The obligation to reserve shipper capacity, Tennessee maintains, is a continuing service of value that the pipeline provides to the suspended shipper, and the shipper, as the recipient of that "hold" service, should be required to pay the reservation (or demand) charge. Otherwise, Tennessee asserts, it will suffer a non-recoverable loss because it is foregoing its ability to resell capacity to another firm shipper. Imposing reservation charges during suspension is reasonable, Tennessee contends, because the pipeline should be paid for the service it continues to provide; conversely, a shipper is not responsible for usage charges during a period of suspension. Tennessee's position that a suspended shipper should pay the reservation charge is, then, a claim for payment of the *full* reservation charge during suspension of service.

However, a "reservation charge" encompasses charges for both reservation and transportation services. *See Third Order,* 105 F.E.R.C. at 61,648; c*f*. 18 C.F.R. § 284.7(a)(1) & (3), (e). The Commission's position is that a pipeline may not collect a

full reservation charge from a suspended shipper because, during suspension, pipelines do not provide full "service" to the shipper. *Third Order,* 105 F.E.R.C. at 61,648. While acknowledging that there is value provided to the suspended shipper when the pipeline reserves capacity for the shipper, the Commission considered the value of that service to be less when all service is suspended. In the Commission's words:

> Tennessee maintains that it is still continuing its obligation to reserve capacity for the shipper during suspension, and should therefore be paid for reserving that capacity. But the shipper is not paying simply to reserve capacity; it is paying to reserve capacity, and, more importantly, to have Tennessee transport gas using that capacity.

*Id.* The Commission concluded that because the pipeline is refusing to transport gas during suspension, the pipeline is failing to perform its obligation under the contract and "therefore, should not be permitted to continue to charge the shipper as if it were receiving service." *Id.*

Further, the Commission explained in responding to Tennessee's complaint that it is at risk for under-recovery of its costs if it cannot charge for service during suspensions, that "this is an election of remedies the pipeline must make." *Id.* If concerned about its liability, the pipeline may suspend (and ultimately terminate the contract) and sue for damages for breach of contract. *Id.* Or the pipeline may elect to continue to provide the service with the shipper remaining responsible for the reservation charges. *Id.* The Commission noted that Tennessee conceded that upon termination of a contract it can no longer charge the shipper under its contract. *Id.* Consequently, while allowing pipelines "the added remedy of suspension of service on shorter notice than [for] termination of service," the Commission saw no reason to allow the pipeline

to charge for "service" during suspension when it would not have that right if "service" was terminated. *Id*. Under Tennessee's tariff, the Commission observed, the shipper's contractual breach may consist only of the failure to post collateral due to a change in its creditworthiness evaluation, and Tennessee may decide to suspend service to the shipper to avoid incurring additional obligations. But the Commission saw no reason to give Tennessee "an added incentive to suspend service by being protected against financial loss in the meantime." *Id*.

We conclude that the Commission has shown that it would be unjust and unreasonable to allow collection of the full reservation charge during a shipper's suspension where the pipeline, in light of available remedies, "retains full control of the shipper's obligation to pay." *Second Order,* 103 F.E.R.C. at 62,066. In suspension situations, the Commission observed, the pipeline has control, and can choose whether to proceed in a manner that allows it to collect the full reservation charge. In non-suspension situations, the shipper controls whether to use its capacity and remains liable to pay the full reservation charge even if it decides not to use all of its reserved capacity during a particular period. Tennessee's response is that it is the shipper's default in its contractual obligation that has caused the pipeline to suspend service until the shipper cures the default. In fact the challenged orders simply identify what consequences follow a pipeline's decision to suspend a shipper's service, leaving it to Tennessee to factor those consequences into its choice, upon a shipper's default, to continue to provide service, to suspend service, or to terminate the contract.

The court properly defers to policy determinations invoking the Commission's expertise in evaluating complex market conditions. *See Conoco Inc. v. FERC,* 90 F.3d 536, 544 (D.C. Cir. 1996); *Columbia Gas Transmission Corp.,* 750 F.2d at 109. That Tennessee favors a different balancing of the risks

of loss, where Tennessee would continue to collect the full reservation charge and the suspended shipper could recoup some of these charges by releasing its capacity in the secondary market until it cures its default, does not demonstrate that the Commission's policy is undeserving of deference by the court. Moreover, consistent with the policy announced in the *First Order,* the Commission has disallowed release or recall of capacity by a suspended shipper on the ground that it would not be "equitable to allow a shipper to have the right to recall or release capacity on a pipeline's system when it was not paying for that capacity." *Trailblazer Pipeline Co.,* 103 F.E.R.C. ¶ 61,225, 61,862 (2003). Tennessee's contention that the Commission never addresses its argument that the policy will eviscerate the distinction between suspension of service and contract termination ignores the Commission's reference to the shorter notice permitted for suspensions than for contract termination. *Third Order,* 105 F.E.R.C. at 61,648. Whatever the Commission's prior policy may have been with respect to electric utilities,[1] Tennessee points to no Commission decision allowing a pipeline to collect the full reservation charge during suspension. *See Third Order,* 105 F.E.R.C. at 61,648. Tennessee relies on *Northern Border Pipeline Co.*, 95 F.E.R.C. ¶ 61,109, 61,316-17 (2001), but it can point to nothing in the opinion where the Commission suggested an understanding of the operation of revenue sharing credits, whereby shippers retain pre-suspension credits, that would support Tennessee's collection of the full reservation charge during a shipper's suspension. Nor has Tennessee shown that the Commission's policy is inconsistent with its regulations on firm transportation service, which simply provide that where a "customer purchases firm service, a pipeline may impose a reservation . . . charge on

---

[1]   *See, e.g., City of Bedford*, 65 F.E.R.C. ¶ 63,017, 65,110-11 (1993) (Electric Service Agreement, art. 6.3); *Ind. & Mich. Elec. Co.,* 53 F.P.C. 2039, 2040 n.1 (1975).

a shipper as a condition for providing such service." 18 C.F.R. § 284.7(e); *see also id*. § 284.7(a)(1) & (3).

While the Commission could not reasonably determine that pipelines, such as Tennessee, provide "no service" to shippers during periods of suspension, this statement in the *Third Order* appears only in response to Tennessee's new argument that Section 6.1 of the Service Agreement, providing that a shipper will pay during the term of the contract "for services provided," bound the shipper to pay the full reservation charge. *Third Order,* 105 F.E.R.C. at 61,648. In the challenged Orders, the Commission's reference to "service" means full service. The Commission acknowledged that the shipper is paying reservation charges "to reserve capacity" and "to have Tennessee transport gas using that capacity." *Id.* Commission counsel acknowledged during oral argument that pipelines continue to provide some service to suspended shippers: the capacity-reservation service has value to the suspended shipper because it remains in a superior position to shippers having no contractual relationship with the pipeline and can begin using its capacity upon curing its contractual default.

The court has no occasion to decide whether Tennessee is entitled to recover a lesser charge from a suspended shipper. Tennessee concedes that it never asked the Commission to approve payment of a lesser amount to cover its costs related to the capacity-reservation service, as distinct from the movement-of-gas-transportation service, both of which are covered by the full reservation charge. While the Commission's policy that a pipeline may not collect a full reservation charge from a suspended shipper is consistent with its regulations on firm transportation service, 18 C.F.R. § 284.7(a)(1) & (3), (e), the regulations do not appear to foreclose an argument to permit a lesser charge. Therefore, the court leaves it to the Commission to decide in the first instance, when a case is properly before it,

how to value the service that pipelines provide shippers during periods of suspension and how much pipelines should be permitted to charge for that service.

Accordingly, we deny the petition for review.

*So ordered.*