# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 19, 2018          Decided June 1, 2018

No. 16-1305

ARKANSAS PUBLIC SERVICE COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ENTERGY SERVICES, INC., ET AL.,
INTERVENORS

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Dennis Lane* argued the cause for petitioner. With him on the briefs were *Glen L. Ortman*, *John E. McCaffrey*, and *Randolph Hightower*. *Marie Denyse Zosa* entered an appearance.

*Gregory W. Camet*, *Mark Strain*, and *Marnie A. McCormick* were on the briefs for intervenor Entergy Services, Inc. in support of petitioner. *Megan E. Vetula* entered an appearance.

*Lona T. Perry*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, General Counsel, and *Robert H.*

*Solomon*, Solicitor.  *Anand Viswanathan*, Attorney, entered an appearance.

*David E. Pomper* argued the cause for intervenors Louisiana Public Service Commission, et al.  With him on the brief were *Stephen Charles Pearson*, *Michael R. Fontham*, *Noel J. Darce*, *Dana Shelton*, *Justin A. Swaim*, *Clinton Andrew Vince*, *Presley Randolph Reed Jr.*, *Jennifer Anne Morrissey*, and *Chad James Reynolds*.  *Paul L. Zimmering* entered an appearance.

Before: HENDERSON and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*:  The Arkansas Public Service Commission petitions for review of a Federal Energy Regulatory Commission ("FERC") final order.  *Entergy Servs., Inc.*, 154 FERC ¶ 61,173 (Mar. 4, 2016), *reh'g denied in part and granted in part*, 156 FERC ¶ 61,112 (Aug. 16, 2016).  In the order under review, FERC held that an operating company withdrawing from a multi-state energy system must continue to share the proceeds of a pre-departure settlement with the other member companies.  The Arkansas Public Service Commission (the "Arkansas Commission"), acting on behalf of Arkansas energy consumers, contends that FERC's order to share the settlement benefits and its method of allocating the benefits of the settlement was unlawful, arbitrary, capricious, and unsupported by substantial evidence.  Because we conclude that FERC had a lawful basis to order the sharing of the benefits of the settlement and was reasoned in its allocation methodology, we deny the petition for review.

## I. Background

### A. Factual History

Beginning in 1951, six companies in Arkansas, Louisiana, Mississippi, and Texas (collectively, the "Operating Companies") entered into an arrangement to share the costs and benefits of power generation and transmission. To that end, they formed the Entergy Corporation, a publicly held and traded utility holding company. The Entergy Corporation is the corporate parent of intervenor Entergy Services, Inc. ("Entergy Services"). The Operating Companies memorialized their arrangement in the Entergy System Agreement ("System Agreement"), a FERC-approved rate plan that governs the multi-state system's generation and transmissions facilities operated as a single system (the "Entergy System") and administered by Entergy Services. Over the years, Entergy Services supplemented the System Agreement with seven service schedules, MSS-1 through MSS-7, which updated the cost-sharing and energy capacity plan. The System Agreement "has been a feature of many cases before this Court." *Council of New Orleans v. FERC*, 692 F.3d 172, 174 (D.C. Cir. 2012); *see, e.g.*, *Arkansas Pub. Serv. Comm'n v. FERC*, 712 F. App'x 3, 4 (D.C. Cir. 2018); *Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 383 (D.C. Cir. 2008); *Louisiana Pub. Serv. Comm'n v. FERC*, 174 F.3d 218, 220 (D.C. Cir. 1999).

The System Agreement provided for the possibility of withdrawal by an Operating Company and required an eight-year notice of intent to withdraw by any company preparing to do so. On December 19, 2005, Operating Company Entergy Arkansas gave such a notice, announcing its intention to withdraw on December 18, 2013. Two years later, another Operating Company, Entergy Mississippi, gave a similar notice. The current controversy over the effects of the withdrawal

concerns a settlement entered with coal transporter Union Pacific in state court litigation before the withdrawal of the two Operating Companies.

In April 2008, Entergy Arkansas, Entergy Services, and other parties settled Arkansas state court litigation against Union Pacific (the "Union Pacific Settlement"). The settlement, as relevant to the present petition for review, locked in a below-market rate for the rail delivery of coal by extending an Entergy Arkansas contract with Union Pacific to the period between July 1, 2012 and June 30, 2015. Entergy Arkansas remained in the System Agreement until partway through this period.

Under the System Agreement, the Operating Companies purchase excess energy from other Operating Companies at-cost. The service schedules set out the price for energy purchases. That price incorporates the cost of coal transportation as one component. Entergy Arkansas was still participating in the System Agreement when Union Pacific failed to make the coal deliveries in the conduct underlying the settlement. Therefore, Entergy Arkansas passed a portion of the increased coal costs to the other Operating Companies under service schedule MSS-3. Likewise, prior to Entergy Arkansas's departure from the System Agreement, Entergy Arkansas also shared its beneficial coal transportation costs under the Union Pacific Settlement with the other Operating Companies. Additionally, some of the Operating Companies had other mechanisms outside of the System Agreement to realize some of the benefits of Entergy Arkansas's reduced coal transportation costs, such as shared ownership of the two affected plants and separate power purchasing agreements. However, the Union Pacific Settlement did not address Entergy Arkansas's impending withdrawal from the System Agreement.

5

B. Procedural History

On November 19, 2009, FERC accepted Entergy Arkansas and Entergy Mississippi's notices of withdrawal from the Entergy System. *Entergy Servs., Inc.*, 129 FERC ¶ 61,143 (Nov. 19, 2009) ("Withdrawal Order"), *reh'g denied*, 134 FERC ¶ 61,075 (Feb. 1, 2011) ("Withdrawal Rehearing Order") (collectively, "Withdrawal Proceedings"). In the Withdrawal Proceedings, FERC found that the System Agreement "contain[ed] no provisions requiring withdrawing Operating Companies to pay a fee or otherwise compensate other remaining Operating Companies prior to withdrawing." Withdrawal Order P. 60. Accordingly, FERC held that Entergy Arkansas and Entergy Mississippi should not have to pay any exit fees to the other Operating Companies upon their departure from the Entergy System.

Intervenor Louisiana Public Service Commission (the "Louisiana Commission"), which represents the interests of Louisiana's energy consumers, filed exceptions to the Withdrawal Order, arguing that FERC should allocate the Union Pacific Settlement benefits as part of the Withdrawal Proceedings. FERC responded that the Louisiana Commission's concerns regarding the allocation of the Union Pacific Settlement Benefits were "beyond the scope of this proceeding and are more appropriately raised" in a future proceeding regarding the structure of the post-withdrawal Entergy System. Withdrawal Rehearing Order at n.54. FERC went on to reinforce that it would still review "future operating arrangements" to ensure they were "just and reasonable" in accordance with FERC's statutory obligations under 16 U.S.C. § 824d.

On September 14, 2011, still concerned about the allocation of the Union Pacific Settlement benefits, the

Louisiana Commission filed a complaint under section 206 of the Federal Power Act. *Louisiana Pub. Serv. Comm'n*, 138 FERC ¶ 61,029 (Jan. 19, 2012). Again, FERC reiterated that it was "premature" to consider the allocation of the Union Pacific Settlement benefits and opined that the Louisiana Commission's concerns would be resolved "in the future proceeding regarding the structure of the post-withdrawal Entergy system." *Id.* at P. 53. Prior to the start of the Withdrawal Proceedings, the Louisiana Commission had also raised the allocation of the Union Pacific Settlement benefits during a 2008 bandwidth proceeding, but it withdrew the issue without prejudice based on the expectation it would be resolved in later proceedings.

On August 14, 2012, this Court affirmed the Withdrawal Proceedings, including FERC's conclusion that the System Agreement does not impose an exit fee or continuing obligation on withdrawing Operating Companies. *Council of New Orleans*, 692 F.3d at 174-77. We also recognized that FERC "must still review the post-withdrawal arrangements to ensure that they are just, reasonable and not unduly discriminatory." *Id*. at 177.

In November 2012, under section 205 of the Federal Power Act, Entergy Services filed its proposal for its post-withdrawal successor plan. The successor plan included the necessary revisions to the System Agreement and the formation of a new integrated utility system (the Midcontinent Independent System) comprised of the remaining Operating Companies. The Louisiana Commission again protested the filing. For the fourth time, the Louisiana Commission raised the issue of the Union Pacific Settlement benefits. In response, the Arkansas Commission and Entergy Services challenged FERC's authority to order Entergy Arkansas to share the Union Pacific Settlement benefits because Entergy Arkansas was no longer participating in the System Agreement. FERC established a hearing to address these issues. *Entergy Servs., Inc.*, 145 FERC ¶ 61,247

(Dec. 18, 2013), *reh'g denied*, 153 FERC ¶ 61,154 (Nov. 9, 2015).

Following settlement discussions and a hearing, the Administrative Law Judge determined that the Union Pacific Settlement benefits should be allocated among the Operating Companies and adopted an allocation methodology. *Entergy Servs., Inc.*, 149 FERC ¶ 63,022 (Dec. 12, 2014). On review and rehearing, FERC affirmed the findings of the Administrative Law Judge and rejected the challenge to its authority. *Entergy Servs., Inc.*, 154 FERC ¶ 61,173 (Mar. 4, 2016), *reh'g denied in part and granted in part*, 156 FERC ¶ 61,112 (Aug. 16, 2016). FERC ordered Entergy Arkansas to make a compliance filing that would refund benefits of the Union Pacific Settlement to the other Operating Companies in accordance with the prescribed allocation method. *Id*.

The Arkansas Commission timely filed a petition for review. The Court granted leave for the Louisiana Commission, the Mississippi Public Service Commission, and the Council of the City of New Orleans to intervene on behalf of FERC and for Entergy Services to intervene on behalf of the Arkansas Commission.

## II. Analysis

We review FERC's final orders under the Administrative Procedure Act. We will vacate FERC decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Further, we will uphold FERC's factual findings if they are supported by substantial evidence. 16 U.S.C. § 825*l*(b); *Town of Norwood v. FERC*, 80 F.3d 526, 529 (D.C. Cir. 1996).

Under the Federal Power Act, FERC is required to ensure that electric rates are "just and reasonable." 16 U.S.C. § 824d. We afford "great deference" to FERC's decisions on this subject because "[t]he statutory requirement that rates be 'just and reasonable' is obviously incapable of precise judicial definition." *Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 554 U.S. 527, 532 (2008); *see Maine v. FERC*, 854 F.3d 9, 22 (D.C. Cir. 2017). We do not ask whether FERC's "decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016), *as revised* (Jan. 28, 2016). Our review in ratemaking cases is therefore "'limited to ensuring that the Commission has made a principled and reasoned decision supported by the evidentiary record.'" *Southern Cal. Edison Co. v. FERC*, 717 F.3d 177, 181 (D.C. Cir. 2013) (quoting *Complex Consol. Edison Co. of N.Y., Inc. v. FERC*, 165 F.3d 992, 1000-01 (D.C. Cir. 1999)).

The Arkansas Commission argues that FERC acted unlawfully, arbitrarily, and capriciously by ordering Entergy Arkansas to share the Union Pacific Settlement benefits with the Operating Companies and by the method that it adopted to allocate the settlement benefits. We will consider FERC's order for Entergy Arkansas to share the Union Pacific Settlement benefits before reviewing the allocation method.

### A. Order to Share the Union Pacific Settlement Benefits

The Arkansas Commission petitions for review of FERC's order for Entergy Arkansas to share the Union Pacific Settlement benefits after its withdrawal from the Entergy System by arguing that the order is an unlawful exit fee and that it violated the filed rate doctrine. We will address each argument in turn.

*Is sharing the settlement benefits an exit fee?*

The Arkansas Commission argues that FERC's order essentially amounts to the imposition of an unlawful exit fee or post-withdrawal continuing obligation contrary to the Withdrawal Proceedings. It is undisputed that the Withdrawal Proceedings confirmed that Entergy Arkansas has no obligation to pay an exit fee and it has no continuing obligation to the remaining member companies of the Entergy Corporation as a result of its withdrawal from the System Agreement. This Court affirmed that conclusion. *Council of New Orleans*, 692 F.3d at 174-77. However, that is not the question before us. A determination that a withdrawing company cannot be compelled to pay an exit fee is separate from the question of whether a sharing of a settlement of pre-split recovery constitutes such a forbidden exit fee. It doesn't. By any logic, an exit fee must have been generated because of the exit. Had Entergy Arkansas remained in the cooperative group, there is little, if any, question that the settlement would have been shared among it and the other companies.

The Withdrawal Proceedings did not settle this issue as the Arkansas Commission maintains. In the Withdrawal Proceedings, FERC put Entergy Arkansas on notice that allocating the Union Pacific Settlement was "beyond the scope of this proceeding and more appropriately raised in a future proceeding regarding the structure of the post-withdrawal Entergy system." Withdrawal Rehearing Order n.54. Further, we expressly limited our decision affirming the Withdrawal Proceedings to FERC's conclusions regarding "the obligation of withdrawing Companies under the [System] Agreement." *Council of New Orleans*, 692 F.3d at 174-77. We acknowledged that FERC would still be reviewing "post-withdrawal arrangements" to ensure that they are just and reasonable.

Given this history, we must consider whether FERC allocated the Union Pacific Settlement benefits based on its obligation to ensure just and reasonable rates in the post-withdrawal successor arrangements or as an "exit fee" from the System Agreement.

All the Operating Companies were injured by Union Pacific's breach of contract. FERC relied on undisputed evidence that the settlement was entered into for the benefits of the entire Entergy System. The Operating Companies' claims to the settlement benefits arose from the nature of the collective harm from Union Pacific's contract breach. Prior to Entergy Arkansas's withdrawal from the Entergy System, the Operating Companies received the benefits they were due by way of the System Agreement's cost-sharing mechanisms. FERC properly reasoned that the Operating Companies' claims to the Union Pacific Settlement benefits did not *arise from* the System Agreement just because the settlement sharing was effectuated by the System Agreement.

Further, the Arkansas Commission's argument that the allocation method is evidence that FERC's order is an exit fee is similarly unconvincing. It is true that FERC's allocation method was based on a calculation that assumed that Entergy Arkansas remained part of the System Agreement. The use of that method does not require us to draw the conclusion that the obligation to share the benefits arises from the System Agreement. Rather, FERC reached a reasoned conclusion that using the System Agreement as a model would ensure the benefits would continue to flow in a "just and reasonable" manner.

FERC defines an exit fee as one "imposed upon a party because of its exit from [the System Agreement] . . . as compensation for or a penalty for its departure." This is not a

case of FERC ordering Entergy Arkansas to compensate the other Operating Companies as a penalty for its departure. Entergy Services' original proposed successor arrangement would have deprived the Operating Companies of the compensation they were due for their injuries, while Entergy Arkansas would receive benefits greater than its injury. FERC found that this would be an unjust and unreasonable cost allocation.

Because FERC was reasoned in concluding that sharing the Union Pacific Settlement benefits was necessary under the principles of equity, and was not a penalty or recompense for the Company's exit from the system, we reject the Arkansas Commission's argument that FERC's order creates an unlawful exit fee.

*Did FERC violate the filed rate doctrine?*

We next turn to the Arkansas Commission's assertion that FERC violated the filed rate doctrine by ordering Entergy Arkansas to share the Union Pacific Settlement benefits. Under that doctrine, public utilities may only charge rates filed with FERC. *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 578 (1981). This assures that customers receive adequate notice of their utility costs. *Transmission Access Policy Study Grp. v. FERC,* 225 F.3d 667, 709 (D.C. Cir. 2000) (per curiam), *aff'd sub nom. New York v. FERC*, 535 U.S. 1 (2002). The Arkansas Commission argues that FERC's order increases the cost to Arkansas consumers without notice, creating a new public utility rate contrary to the filed rate doctrine. We disagree.

The filed rate doctrine has never been construed as requiring FERC to close its eyes to changes in circumstances that render a rate that was once just and reasonable but no longer comports with the new reality. FERC has "broad authority to

fashion equitable remedies in a variety of settings." *Columbia Gas Transmission Corp. v. FERC,* 750 F.2d 105, 109 (D.C. Cir. 1984).

In this case, FERC reasons that it is not overriding a filed rate but merely effectuating the purpose of a non-jurisdictional contract, the Union Pacific Settlement. Entergy Services was a party to the Union Pacific Settlement, and FERC found it entered into the settlement on behalf of all the Operating Companies while they were under FERC's jurisdiction through the System Agreement, a filed rate. Even though FERC, in at least one case, has relied on an existing filed rate provision in deciding not to impose post-withdrawal obligations on a party, that is not sufficient to limit FERC's authority in this case. *Midwest Indep. Transmission Sys. Operator, Inc.*, 124 FERC ¶ 61,219 at P. 173 (Sept. 3, 2008). In that decision, FERC noted that it was reserving its authority to impose equitable relief "in the future" in different circumstances, and it is not reasonable to extend this one-time decision to bar equitable relief in all post-withdrawal successor arrangements. *Id.* We agree, FERC has the authority to fashion a remedial rate.

Next, the Arkansas Commission points out that when the Union Pacific Settlement was negotiated and executed, all the parties knew that Entergy Arkansas would be exiting the System Agreement and yet the Union Pacific Settlement does not contain any terms about post-withdrawal obligations. Further, the Arkansas Commission argues that FERC cannot have authority over the Union Pacific Settlement unless it was actually filed as a rate or other amendment to the System Agreement. Therefore, the Arkansas Commission urges, FERC erred by inferring that the parties intended the settlement to be shared after Entergy Arkansas's withdrawal.

However, FERC considered evidence that the whole Entergy System was harmed by Union Pacific's breach. Accordingly, FERC inferred that the benefits of the settlement were meant to be shared by the entire system. In other contexts, FERC has exercised its authority to interpret an unfiled contract, even when that interpretation has implications on a filed rate, as part of ensuring a just and reasonable rate. *See e.g.*, *Public Utils. Comm'n of State of Cal. v. FERC*, 254 F.3d 250, 255 (D.C. Cir. 2001); *City of Osceola v. Entergy Ark., Inc.*, 791 F.3d 904, 908 (8th Cir. 2015) (citing *Portland Gen. Elec. Co.*, 72 FERC ¶ 61,009, 61,021 n.14 (1995)). FERC's authority extends to remedial jurisdiction over cost allocation even when it is not a filed rate, in order to prevent an unjust and unreasonable rate. *See Louisiana Pub. Serv. Comm'n*, 522 F.3d at 390. Given the absence of any evidence that the parties did not intend that the Union Pacific Settlement benefits would continue to be shared between the Operating Companies, FERC was not arbitrary and capricious by making a decision recognizing the change in circumstances.

Persuasively, even here, the Arkansas Commission and Entergy Services are not protesting FERC's decision to order the Operating Companies to continue to share the cost of the Ouachita Plant transmission network upgrade as part of the successor arrangements. Though the Arkansas Commission and Entergy Services attempt to distinguish the post-withdrawal requirement to share the cost of the Ouachita upgrade from the Union Pacific Settlement benefits, both arose during Entergy Arkansas's operation as a member of the System Agreement. It is true that System Agreement does not directly address the Union Pacific Settlement benefits, nor the Ouachita Plant upgrade cost sharing, post-withdrawal. But, FERC's authority regarding the Union Pacific Settlement stems from its authority over the filed rate in force at the time the Operating Companies were injured and the Union Pacific Settlement was executed.

FERC has the obligation to review the successor arrangements following the withdrawal of an Operating Company under Federal Power Act because the conditions of the withdrawal can impact other market participants. *See Maine Pub. Utilities Comm'n v. FERC*, 454 F.3d 278, 285-87 (D.C. Cir. 2006). In this case, FERC ordered the sharing of the Union Pacific Settlement benefits precisely because failing to do so would be unjust and unreasonable to the other market participants who were injured by Union Pacific's breach. FERC's decision to enter a remedial order to prevent an unjust and unreasonable rate is not the same as overriding a filed rate.

Therefore, because FERC did not impose an exit fee or override a filed rate, but effectuated a just and reasonable cost-benefits allocation, we deny the Arkansas Commission's petition to review FERC's order that Arkansas Entergy must share the Union Pacific Settlement benefits.

## B. Allocation Method

The Arkansas Commission next petitions for review of FERC's method of allocation of the Union Pacific Settlement benefits. We will review the method FERC adopted to allocate the settlement benefits and the Arkansas Commission's proposed alternative before turning to FERC's reasoning.

FERC considered expert testimony regarding three valuation analyses prepared by an Entergy Services witness, Thomas D. Crowley. In 2008, Crowley performed an initial study to estimate the value of the Union Pacific Settlement as part of Entergy Arkansas's prudence review to make sure the terms of the settlement fairly compensated it for its damages. In 2010, Crowley updated the study with more current information (the "2010 Crowley Study").

The 2010 Crowley Study quantified the hypothetical coal transportation costs if Entergy Arkansas did not enter into the Union Pacific Settlement. Without the settlement, Entergy Arkansas's coal transportation contract would have expired in June 2011. The study assumed that Entergy Arkansas would have procured replacement transportation through its usual business practice of entering multi-year transportation contracts. Crowley used the rate another railroad offered Entergy Arkansas for coal transportation in November 2009 as the proxy for the contract rate that Entergy Arkansas would have likely paid had it entered into a replacement contract in 2011. The difference between that hypothetical transportation contract and the more advantageous contract afforded by the Union Pacific Settlement was used to define the benefits of the settlement. FERC adopted the results of the 2010 Crowley Study in order to quantify the benefits of the Union Pacific Settlement.

In the alternative, the Arkansas Commission advances a 2014 study also performed by Crowley (the "2014 Crowley Study") as a better estimate of the benefits of the bargain. As it turns out, coal transportation prices were lower in 2012 than the 2010 Crowley Study predicted. Therefore, the 2014 Crowley Study incorporates that price difference in its result, reducing the valuation of the Union Pacific Settlement benefits compared to the 2010 Crowley Study's prediction.

FERC reasoned that the 2014 Crowley Study was not a good estimate of the benefits of the bargain. Specifically, the 2014 Crowley Study assumes that Entergy Arkansas knew that the transportation prices would drop in 2012. To perform the valuation, Crowley combined a hypothetical transportation contract for 2011-2012 and a follow-on contract from 2012-2015, which would take advantage of the reduced rates available in 2012. FERC dismissed this study as suffering from "hindsight bias" that does not reflect the reality of what Entergy

Arkansas would have paid for coal transportation in the absence of the settlement. Without the Union Pacific Settlement, FERC found it likely that Entergy Arkansas would have entered into a multi-year transportation contract in 2011 and not benefited from the price dip in 2012. To reach its findings, FERC considered evidence of actual contracting practices and the testimony of an economics expert. Further, there was no evidence that Entergy Arkansas could have anticipated the 2012 drop in coal transportation prices and made different contracting decisions.

FERC's adoption of the 2010 Crowley Study to allocate the Union Pacific Settlement benefits was the product of a reasoned decision and based on substantial evidence. Therefore, we affirm FERC's use of this allocation method.

### III. Conclusion

For the reasons set forth above, we hold that FERC's order for Entergy Arkansas to share the Union Pacific Settlement benefits and its method for allocating the settlement was not arbitrary, capricious, or contrary to law. Accordingly, the Arkansas Commission's petition for review is denied.