# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2274

_____

City of Osceola, Arkansas

*Plaintiff - Appellant*

v.

Entergy Arkansas, Inc.; Entergy Services, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: March 12, 2015
Filed: July 2, 2015

_____

Before MURPHY and SHEPHERD, Circuit Judges, and HARPOOL,[1] District
Judge.

_____

MURPHY, Circuit Judge.

The City of Osceola purchases wholesale energy from Entergy Arkansas, Inc.
(Entergy) under an agreement filed with and approved by the Federal Energy

---

[1]The Honorable Douglas Harpool, United States District Judge for the Western
District of Missouri, sitting by designation.

Regulatory Commission (FERC). Osceola sued Entergy in Arkansas state court, seeking reimbursement for charges allegedly in violation of their agreement. Entergy removed the case to the federal district court[2] which denied Osceola's motion to remand, granted summary judgment to the defendant energy providers, and dismissed the case. Osceola appeals, and we affirm.

## I.

Entergy's parent company operates a system of multiple energy providers. In 2005 FERC decided that the allocation of production costs among the companies in this system was no longer just and reasonable. La. Pub. Serv. Comm'n.v. Entergy Servs., Inc., Opinion No. 480, 111 F.E.R.C. ¶ 61,311 (2005). In order to equalize production costs, FERC implemented a bandwidth based remedy under which it set a bandwidth of +/-11% above and below the system average production cost. Companies with costs below the band were required to make bandwidth payments to companies above the average. From 2007 to 2009, Entergy was the only company which was required to make payments to the other energy providers.

The City of Osceola, Arkansas purchased wholesale energy from Entergy under a Power Coordination, Interchange, and Transmission Agreement (the agreement). After making the payments required by FERC's bandwidth remedy, Entergy passed the cost on to Osceola, submitting bills which totaled $4,087,668.10. The monthly bills categorized these payments as "purchased energy." In the same time period Entergy passed its cost for the payments on to other customers, including Union Electric. As required by FERC, Entergy made a compliance filing before an administrative law judge to ensure it was properly implementing the bandwidth remedy. Both Osceola and Union Electric intervened in the compliance action.

---

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

Osceola stated in its intervention motion that these new rates could substantially affect what it must pay to Entergy under their own agreement.

In the FERC compliance action, Union Electric had successfully sought permission to argue that their contract did not permit Entergy to pass on charges for the bandwidth payments. Union Electric also filed a separate FERC complaint based on the same argument, but this was held in abeyance and eventually dismissed. After an administrative law judge ruled that Entergy's charges to Union Electric for the bandwidth payments were proper, Union Electric appealed to FERC. On January 11, 2010, FERC reversed the administrative law judge. It decided that while bandwidth payments could be charged to wholesale customers, Union Electric's contract with Entergy did not permit it to charge these payments as "purchased energy." Entergy Servs., Inc., Opinion No. 505, 130 F.E.R.C. ¶ 61,023 PP 100–01 (2010). FERC ordered Entergy to pay refunds to Union Electric. Entergy Servs., Inc., Opinion No. 505-A, 139 F.E.R.C. ¶ 61,103 P 39 (2012). Osceola did not contest its own charges nor participate in any appeal to the Commission.

Subsequent to the parties' oral argument in our case, the United States Court of Appeals for the District of Columbia Circuit issued a decision denying Entergy's petition for review of the FERC decision which had interpreted its contract with Union Electric. La. Pub. Serv. Comm'n. v. FERC, No. 12-1282, slip. op. at 5 (D.C. Cir. Mar. 13, 2015).

After the appeal to the full Commission in the compliance action was resolved, Osceola requested that Entergy refund its bandwidth payments. Entergy refused, and on December 12, 2012 Osceola filed this civil action in Arkansas state court. Its complaint contained a breach of contract claim seeking recovery of the $4 million in bandwidth payments that Entergy had allegedly "unlawfully billed Osceola" plus interest. The complaint sought an "award of damages as is permissible under the Federal Power Act . . . and decisions of FERC." The filing reproduced the energy rate

-3-

formula contained in the parties' agreement and alleged that it was identical to the formula contained in Union Electric's agreement with Entergy. Osceola asserted that "FERC has already interpreted this contract provision" and ruled that the bandwidth payments could not be billed as purchased energy. It further alleged that by billing these bandwidth payments Entergy violated both the terms of the agreement and relevant FERC orders 505 and 505A.

After Entergy removed the case to the United States District Court, Osceola moved for remand asserting that subject matter jurisdiction was lacking. The motion to remand was denied on September 20, 2013. The district court explained that Osceola was raising an identical claim to one which Union Electric had made before FERC, claiming entitlement to the same remedies if permissible under the Federal Power Act and FERC decisions. Thus, the claim "turn[ed] on federal law" even though it used breach of contract language.

The district court granted summary judgment to Entergy on April 30, 2014. The court concluded that FERC had exclusive jurisdiction over the matter under the filed rate doctrine which bars courts from imposing any rate other than the rate approved by FERC. The district court reasoned that the FERC opinion which Osceola was seeking to have applied in this case was specific to Union Electric and therefore did not provide Osceola a filed rate exception. It also concluded that Osceola's suit was barred by res judicata because it had had an opportunity to present its breach of contract claim in the FERC compliance proceeding, but it had not done so. Osceola now appeals.

II.

Osceola initially argues that a remand to state court is required because subject matter jurisdiction is lacking. It claims that its Arkansas common law breach of contract action raises no federal issue. To determine whether there is federal

jurisdiction, we apply the well pleaded complaint rule and ask whether a "federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The district court noted that Osceola sought damages permissible under the Federal Power Act and FERC decisions and concluded that the claim turned on federal law.

The district court did not err by denying the motion to remand. The contract Osceola seeks to enforce is its Power Coordination, Interchange, and Transmission Agreement with Entergy. Under federal law this agreement is required to be filed with FERC. 16 U.S.C. § 824d(c). Moreover, FERC has determined that all rates and charges set out in the agreement were "just and reasonable" as required by federal law. 16 U.S.C. § 824d(a). Any rate or charge not determined just and reasonable is unlawful. Id. Osceola seeks to enforce the tariff contained in the agreement and approved by FERC. Such filed tariffs are "the equivalent of a federal regulation," and therefore a suit to enforce them arises under federal law. Cahnmann v. Sprint Corp., 133 F.3d 484, 488 (7th Cir. 1998).

As Entergy contends, the district court concluded that it lacked authority to rule on Osceola's claims because FERC has exclusive jurisdiction over their subject matter under the filed rate doctrine. The Supreme Court has made clear that in passing the Federal Power Act, 16 U.S.C. § 824(b), Congress made a bright line distinction between state and federal jurisdiction, giving FERC plenary and exclusive authority over interstate wholesale rates. Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 966 (1986). The authority to determine whether rates are just and reasonable is vested solely in FERC. Ak. La. Gas Co. v. Hall, 453 U.S. 571, 577 (1981). Under the filed rate doctrine, no seller of energy may collect a rate other than the one filed with and approved by FERC, and no court may substitute its own judgment for that of FERC. Id.

FERC itself lacks authority to alter filed rates retroactively. If it finds a filed rate to be unreasonable, it only has statutory authority to impose a new rate prospectively. Ak. La. Gas Co. v. Hall, 453 U.S. at 578. If a case does not involve a challenge to a rate, however, the filed rate doctrine does not provide FERC with exclusive jurisdiction. See Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 913 (8th Cir. 2009) (breach of contract claims which challenge FERC filed rates are preempted by the Federal Power Act, but not every legal dispute implicating a FERC filed agreement is converted "into one over which the FERC exercises exclusive jurisdiction."). As FERC itself has recognized, "issues of interpretation of a contract on file with the Commission are within the Commission's concurrent jurisdiction with the courts." Portland Gen. Elec. Co., 72 F.E.R.C. ¶ 61,009, 61,021 n.14 (1995) (collecting decisions).

In light of these principles, we conclude that Osceola's claim here is not barred by the filed rate doctrine. The agreement between Osceola and Entergy provides a rate formula which has been approved by FERC. The current dispute centers on the interpretation of that formula and on whether the $4 million in bandwidth payments Entergy charged Osceola were proper under the FERC approved rate formula. In respect to allegedly similar charges assessed to Union Electric, FERC has determined that the bandwidth payments were not properly charged and ordered refunds. Entergy Servs., Inc., Opinion No. 505, 130 F.E.R.C. ¶ 61,023 PP 100–01 (2010). Entergy Servs., Inc., Opinion No. 505-A, 139 F.E.R.C. ¶ 61,103 P 39 (2012). The D.C. Circuit denied a petition for review of that determination. La. Pub. Serv. Comm'n. v. FERC, No. 12-1282, slip. op. at 5 (D.C. Cir. Mar. 13, 2015). FERC lacked the ability to impose any retroactive rate, see Ak. La. Gas Co., 453 U.S. at 578, and its decision in respect to Union Electric was an interpretation of the terms of the rate formula, not a decision setting a new filed rate. That is similar to what is at issue in the case before our court, for this case does not raise a challenge to a filed rate over which FERC has exclusive jurisdiction. See Cent. Iowa Power Co-op., 561 F.3d at 913.

## III.

Even when jurisdiction is proper in a given case, a court must consider whether an executive agency has primary jurisdiction. Primary jurisdiction is a common law doctrine used "to coordinate judicial and administrative decision making." Access Telecomm. v. Sw. Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998). The doctrine allows a court with jurisdiction to refer a case to the appropriate administrative agency for initial decision. Id. Courts use this doctrine sparingly due to the potential expense and delay which may result. Id.

There is no "fixed formula" for deciding whether an agency has primary jurisdiction over a case; instead courts consider whether "desirable uniformity" would result from an agency determination and whether "the expert and specialized knowledge" of the agency is needed. United States v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956). FERC has similarly identified three factors which it considers when determining whether to exercise primary jurisdiction:

> (1) whether the Commission possesses some special expertise which makes the case peculiarly appropriate for Commission decision; (2) whether there is a need for uniformity of interpretation of the type of question raised by the dispute; and, (3) whether the case is important in relation to the regulatory responsibilities of the Commission.

Ak. La. Gas Co. v. Hall, 7 F.E.R.C. ¶ 61,175, 61,322 (1979)

After examining these factors, we conclude that FERC has primary jurisdiction over the issues presented here. In the exercise of its regulatory power, FERC has determined that the bandwidth remedy is necessary to ensure that allocation of production costs among the companies in the Entergy system were just and reasonable. Opinion No. 480, 111 F.E.R.C. ¶ 61,311 P1.

The treatment of bandwidth payments under the various contracts between Entergy and numerous wholesale energy purchasers will doubtless affect the ability of FERC to oversee and enforce its bandwidth remedy. FERC relied on its expertise and familiarity with the bandwidth remedy in deciding similar questions presented in the Union Electric proceeding. There, FERC concluded that "the character of the bandwidth payments demonstrates that these payments are not solely purchased energy expenses." Opinion No. 505, 130 F.E.R.C. ¶ 61,023 P 103. When denying a petition for review of that decision, the District of Columbia Circuit pointed out that the term "purchased energy expense" is neither defined in the contract nor the Code of Federal Regulations, and that FERC "relied on significant testimony in the record" regarding the parties' intentions. La. Pub. Serv. Comm'n., No. 12-1282, slip. op. at 5.

The Supreme Court has instructed that "where words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that the inquiry is essentially one of fact and of discretion in technical matters, then the issue of tariff application must first go" to the administrative agency. W. Pac. R.R. Co., 352 U.S. at 66 (internal quotation marks omitted). Moreover, since FERC has already decided a nearly identical question in the context of its Union Electric decision, the interests of uniformity will be served by referral to FERC. The need for FERC to ensure uniform treatment of the bandwidth charges here is especially great given that Entergy asserts there are substantial differences between its contracts with Osceola and with Union Electric. FERC is best positioned to determine how similar the agreements are and to ensure uniform treatment of bandwidth expenses.

Osceola urges consideration of the FERC decision to decline primary jurisdiction in Entergy Ark., Inc., 112 F.E.R.C. ¶ 61,306 P 26, quoting its language to the effect that "[t]he ascertainment of parties' intent when they execute a contract is a matter of case-by-case adjudication that does not involve the considerations of

uniformity or technical expertise that, in other circumstances, might call for the assertion of this Commission's jurisdiction." The FERC decision in that case, however, did not involve the bandwidth payments at issue here. The agency noted that that contract was "unique to the parties," making that dispute "unlikely to arise in other contexts or to affect other parties." Id. Here in contrast, FERC has already decided to resolve an allegedly similar dispute regarding Union Electric, and Osceola's complaint alleged that a similar dispute has already arisen.

IV.

Since we conclude that FERC has primary jurisdiction to determine the appropriate treatment of the bandwidth payments under the parties' agreement, we have "discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." Reiter v. Cooper, 507 U.S. 258, 268–69 (1993). At oral argument the city of Osceola indicated that it could likely still file its claim before FERC, and no party has suggested that a dismissal and referral to FERC would prejudice it.

Based on this record and FERC's technical expertise in implementing and supervising its bandwidth remedy, we conclude that FERC's primary jurisdiction would best ensure uniform treatment of bandwidth charges.

Accordingly, we affirm the dismissal of this case, but modify it to be without prejudice.

_____