# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1101
_____

Great Lakes Gas Transmission Limited Partnership

*Plaintiff - Appellee*

v.

Essar Steel Minnesota LLC; Essar Steel Limited, formerly known as Essar Steel
Holdings, Ltd.; Essar Steel India Limited, formerly known as Essar Steel Limited;
Essar Global Fund Ltd., formerly known as Essar Global Limited

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 20, 2016
Filed: December 5, 2016
_____

Before MURPHY, GRUENDER, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Great Lakes Gas Transmission Limited Partnership ("Great Lakes") brought
suit against Essar Steel Minnesota, LLC and related entities ("ESML") for breach of
contract in federal court, asserting diversity jurisdiction. The parties later discovered
that diversity jurisdiction did not exist, and ESML filed a motion to dismiss for lack

of subject matter jurisdiction. The district court held that it had federal question jurisdiction and denied the motion. The case proceeded to trial, and judgment was entered for Great Lakes. For the reasons discussed below, we conclude that the district court lacked subject matter jurisdiction. Therefore, we vacate the judgment and remand with instructions to dismiss for lack of jurisdiction.

I.

Great Lakes operates a pipeline that transports natural gas from Canada to locations in Minnesota. ESML's predecessor, Minnesota Steel Industries ("MSI"), sought to obtain gas for use at a steel production facility it planned to build in Nashwauk, Minnesota. Thus, on September 6, 2006, MSI and Great Lakes entered into a Transportation Service Agreement ("TSA") for the transportation of gas to Nashwauk.

The TSA provided that Great Lakes would transport up to 55,000 dekatherms of gas per day from July 1, 2009 to March 31, 2024. In exchange for the transportation of natural gas, the TSA required MSI to pay Great Lakes its maximum reservation rates and charges on a monthly basis under the applicable rate schedule reflected in Great Lakes's gas tariff ("Tariff") on file with the Federal Energy Regulatory Commission ("FERC"). The TSA also incorporated by reference the terms of the Tariff, which included provisions such as a *force majeure* clause and a limitation of liability clause. Additionally, the TSA stated that any controversy arising under the agreement "shall be determined in accordance with the laws of the State of Michigan."

On October 22, 2007, Essar Steel Holdings Ltd. acquired MSI, and MSI subsequently changed its name to ESML. According to ESML, it was still in the process of obtaining financing to construct the planned Nashwauk facility when the 2008 financial crisis delayed construction of the facility. Thus, in early 2009, ESML

communicated to Great Lakes that performance under the existing terms of the TSA was impractical and that it wished to modify the terms, including the commencement date. As of October 2009, the parties had not reached an agreement, and ESML had not made any of the monthly payments due beginning in August 2009. As a result, on October 29, 2009, Great Lakes brought suit against ESML in federal court.

Great Lakes's first amended complaint ("FAC") pleaded a claim for breach of contract under a theory of anticipatory repudiation, and it requested relief in the form of all future payments that would have been due under the TSA until its expiration in March 2024. The FAC did not mention a cause of action based on federal law, and it included only a passing reference to the Tariff in the factual background section, stating that "MSI agreed to pay the rates indicated in the Contract, which include the maximum reservation rate for the Contract's transportation path as reflected in Great Lakes' FERC Gas Tariff, Second Revised Volume No. 1 ('Tariff')." The FAC identified diversity jurisdiction as the only basis for subject matter jurisdiction.

Thus, the case proceeded under the assumption that diversity jurisdiction existed. On May 15, 2012, when ruling on a counterclaim by ESML, the district court applied Michigan law to determine that the *force majeure* clause did not apply to the unforeseen financial crisis. On March 19, 2013, the court again applied Michigan law to hold that ESML had committed an anticipatory repudiation of the TSA and to deny ESML's affirmative defense based on the Tariff's limitation of liability clause. As a result, the court granted Great Lakes's motion for partial summary judgment and held that Great Lakes was entitled to recover the entire payment stream due under the TSA. Because the parties agreed that damages needed to be reduced to net present value and that determining the particular discount rate to apply was a question of fact, a trial was scheduled to calculate damages.

Meanwhile, ESML filed a complaint with FERC on November 27, 2012, asking FERC to order Great Lakes "to negotiate in good faith to resolve this dispute

with ESML." FERC found that it lacked exclusive jurisdiction because ESML was not challenging the reasonableness of the Tariff's rate, and FERC declined to exercise its primary jurisdiction. Thus, FERC dismissed the complaint.

On the eve of trial, ESML alerted the court that one of Great Lakes's limited partners, TC PipeLines, LP, had hundreds or thousands of public unitholders whose citizenship destroyed diversity jurisdiction. Great Lakes had not previously disclosed their existence, and ESML noticed the inaccuracy in Great Lakes's citizenship disclosure while preparing a trial brief. ESML moved to dismiss the case for lack of subject matter jurisdiction.

On May 4, 2015, the district court denied the motion to dismiss. The court agreed with ESML that diversity jurisdiction was not present. Nevertheless, the court held that federal question jurisdiction existed. The court did not base its decision on the proposition that federal law created the cause of action. In fact, it rejected the argument that the Natural Gas Act ("NGA") creates an express cause of action for recovering payments due under a federal tariff, and it declined to rule on whether the NGA creates an implied cause of action. Rather, the court held that it had federal question jurisdiction "given the disputed and substantial federal issues at play." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, 103 F. Supp. 3d 1000, 1017-18 (D. Minn. 2015). The court also held that its jurisdiction over the claim was exclusive because of the NGA's exclusive jurisdiction provision.

The case proceeded to trial, and Great Lakes received a judgment in the amount of $32,902,183. On appeal, ESML raises four arguments: (1) the district court lacked subject matter jurisdiction; (2) the district court erred in granting summary judgment on the anticipatory repudiation claim; (3) the district court erred in dismissing ESML's affirmative defense based on the Tariff's limitation of liability provision; and (4) the district court abused its discretion in excluding ESML's expert witness on damages and in limiting ESML's cross-examination of Great Lakes's expert witness.

We agree with ESML that the district court lacked subject matter jurisdiction, and thus we do not address ESML's remaining arguments.

## II.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citation and quotation marks omitted). "The existence of subject matter jurisdiction in federal court is a question of law subject to *de novo* review." *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990). The parties agree that the only possible basis for subject matter jurisdiction is federal question jurisdiction, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331.

"[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Federal question jurisdiction exists if the well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998) (citation and quotation marks omitted). Thus, we first address whether federal law creates the cause of action in this case, and we next address whether Great Lakes's right to relief necessarily depends on resolution of a substantial question of federal law.

III.

"[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 808. Federal law may create a cause of action "either expressly or by implication." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979). The cause of action identified in the FAC is a breach of contract claim. For the reasons that follow, we conclude that federal law neither expressly nor implicitly created this cause of action.

A.

We agree with the district court that federal law does not create an express cause of action under which Great Lakes may sue for breach of contract. The Tariff was filed pursuant to the NGA, and nothing in the NGA expressly creates a cause of action for breach of contract. Although Section 717u of the NGA provides that district courts have "exclusive jurisdiction of violations of [the NGA] or the rules, regulations, and orders thereunder," 15 U.S.C. § 717u, the district court correctly ruled that this provision "does not create a cause of action, but merely states that federal district courts have exclusive jurisdiction over cases that otherwise arise under federal law or involve a substantial question of federal law." *Great Lakes*, 103 F. Supp. 3d at 1013. Indeed, "[e]xclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction." *Pan Am. Petroleum Corp. v. Super. Ct. of Del.*, 366 U.S. 656, 664 (1961); *see also Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 591 (6th Cir. 2013) ("Section 717u provides for federal jurisdiction, but it does not create an action."). Thus, the NGA does not create an express federal cause of action.

B.

The NGA also does not create an implied cause of action. In limited circumstances, courts may determine that "a private remedy is implicit in a statute not expressly providing one." *Cort v. Ash*, 422 U.S. 66, 78 (1975). Before the district court, Great Lakes contended that Section 717c of the NGA creates an implied cause of action. Great Lakes argued that because Section 717c prohibits "undue preference or advantage," Great Lakes must be able to sue to collect unpaid tariff payments from all of its shippers in order to avoid giving undue preference to shippers from whom it does not collect. *See* 15 U.S.C. § 717c(b). The district court declined to rule on whether the NGA creates an implied cause of action because it noted that the two relevant Supreme Court cases were "not particularly instructive." *Great Lakes*, 103 F. Supp. 3d at 1015, 1018. On appeal, Great Lakes contends that our recent decision in *City of Osceola v. Entergy Arkansas, Inc.*, 791 F.3d 904 (8th Cir. 2015) establishes that "a suit to enforce an agreement incorporating a FERC-approved tariff arises under federal law." However, *Osceola* and the two Supreme Court cases identified by the district court are distinguishable from the present case.

In *Louisville & N. R. Co. v. Rice*, a railroad sued a consignee to recover money "claimed to be due under tariffs approved and published as required by Interstate Commerce Act." 247 U.S. 201, 201 (1918). The Supreme Court recognized that the Interstate Commerce Act ("ICA") expressly "requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff in respect of every shipment." *Id.* at 202. Thus, the Court held that federal jurisdiction existed because the "result of the action necessarily depended upon construction and effect of [the ICA]." *Id.* at 203. Likewise, in *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, the Court held that federal jurisdiction existed over a claim seeking "pay[ment] for transport services as required by petitioner's tariff" because the complaint specifically "alleged that the action arose under the Interstate Commerce Act." 460 U.S. 533, 533 (1983).

This case involves the NGA, not the ICA. Unlike the ICA, the NGA does not expressly require transporters to collect and shippers to pay all lawful charges from their shippers. Thus, the result of this action did not "necessarily depend[] upon construction" of the NGA. *See Rice*, 247 U.S. at 203. Moreover, the FAC did not "allege[] that the action arose under" the NGA. *See Thurston*, 460 U.S. at 533. Indeed, aside from one brief reference to the Tariff, the FAC did not mention any federal law at all. Therefore, both *Rice* and *Thurston* are inapposite.

In *Osceola*, we addressed a claim brought to enforce a tariff filed under the Federal Power Act ("FPA"). 791 F.3d at 907. There, FERC required certain companies, including the defendant, Entergy, to make "bandwidth payments" to other companies. *Id.* at 906. After making these bandwidth payments, Entergy passed the costs on to its customers as "purchased energy." *Id.* In a FERC compliance action, FERC determined that Entergy's contract with one of its customers, Union Electric, did not permit Entergy to charge these payments to Union Electric as purchased energy. *See id.* Subsequently, another customer, the City of Osceola, sued Entergy in state court, seeking recovery of $4 million in bandwidth payments charged to Osceola. *See id.* at 907. Osceola's complaint cited FERC decisions, asserted that those decisions governed the interpretation of Osceola's contract with Entergy, and stated that Osceola "sought damages permissible under the Federal Power Act and FERC decisions." *Id.* On appeal after removal to federal court, we observed that this dispute centered on the interpretation of a "rate formula" contained within the agreement and approved by FERC. *Id.* at 908. Based on these facts, we concluded that removal was proper, noting that Osceola sought to enforce the tariff contained in the agreement and approved by FERC and that "a suit to enforce [filed tariffs] arises under federal law." *Id.* at 907-08.

Unlike in *Osceola*, this claim was not brought to enforce the terms of a tariff as previously interpreted by FERC. This dispute did not "center[] on" an interpretation of a "FERC approved rate formula," nor did the FAC seek "damages

-8-

permissible under" the NGA or FERC decisions. *See id.* Rather, the FAC alleged a simple breach of contract claim. There was no indication that federal law created this cause of action or played any role in Great Lakes's right to relief. Therefore, *Osceola* does not suggest that federal law necessarily creates an implied cause of action for breach of contract.

To determine whether the NGA creates such a cause of action, "the central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). Several factors are relevant to this inquiry, including whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one" and whether the cause of action is "one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort*, 422 U.S. at 78. Other than the inferences that Great Lakes seeks to draw from Section 717c, there is no indication of legislative intent to create a federal cause of action displacing traditional state law breach of contract causes of action. Indeed, "all pronouncements by the Supreme Court have indicated that regulation of the natural gas industry was intended to be a cooperative operation between the state and federal governments." *City of New Orleans v. United Gas Pipe Line Co.*, 390 F. Supp. 861, 866 (E.D. La. 1974). Therefore, we find no implied federal cause of action for breach of contract in the NGA. Because federal law does not create the cause of action identified in the FAC, federal question jurisdiction may not rest on this basis.

IV.

Even though federal law does not create the cause of action, federal question jurisdiction may exist if Great Lakes's "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This rule applies only to a "special and small category" of cases that present "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699-700 (2006) (citation and quotation marks omitted).

For example, in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the plaintiff brought a state law claim to quiet title in real property, claiming that the IRS failed to provide the plaintiff with the notice required by a federal statute. 545 U.S. at 310-11. The Supreme Court noted that "the meaning of the federal statute is thus an essential element of [the] quiet title claim" and it "appears to be the only legal or factual issue contested in the case." *Id.* at 315. Thus, the Court held that "the meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court." *Id.* The Court emphasized the narrowness of its holding, stating that the exercise of federal jurisdiction would have only a "microscopic effect on the federal-state division of labor" because "it will be the rare state title case that raises a contested matter of federal law." *Id.* In contrast, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, the Court found that a dispute over the meaning of terms in a federal health insurance contract was "fact-bound and situation-specific" and could not "be squeezed into the slim category *Grable* exemplifies." 547 U.S. at 701.

Here, the district court held that it had federal question jurisdiction under the *Grable* rule. The court first recognized that "federal tariffs carry the same legal force as federal regulations, and are thus considered federal law." *Great Lakes*, 103 F. Supp. 3d at 1018 (citations omitted); *see also MCI Telecomms. Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992) (explaining that "federal tariffs are the law, not mere contracts"). The court then held that the construction and application of this federal law was both "necessarily raised" and "actually disputed." The court reasoned that, even if ESML had not raised the *force majeure* and limitation of

liability clauses as affirmative defenses, the court would have needed to interpret those clauses when determining the merits of Great Lakes's affirmative case for damages. *Great Lakes*, 103 F. Supp. 3d at 1021-24.

Assuming that the district court correctly held that federal issues were "necessarily raised" and "actually disputed," we do not agree with the district court that the third and fourth requirements of *Grable* are satisfied. *See Grable*, 545 U.S. at 314. Specifically, we do not agree that the federal issues in this case are "substantial," nor do we agree that federal courts can exercise federal question jurisdiction "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *See id.*

A.

The third requirement of *Grable* is not met because the federal issues in this case are not substantial in the relevant sense. The district court held that the interpretation of these Tariff provisions was "significant to the federal system as a whole" based on the following logic:

> Likely, many tariffs contain limited liability provisions that are similar, if not identical, to the provisions at issue in this case. Therefore, in future NGA tariff violation cases, courts may look to the way in which this Court interpreted the Tariff provisions here, and applied those provisions to the particular facts of this case, in order to determine whether a defendant is liable for damages in a similar case.

*Great Lakes*, 103 F. Supp. 3d at 1024-25 (citation omitted).

However, the district court did not interpret the *force majeure* or limitation of liability clauses in accordance with federal law. Rather, as required by the TSA, it interpreted the Tariff provisions in accordance with Michigan law. As another court

-11-

has recognized, there is little national interest in having a federal court interpret tariff provisions if it will merely apply state law:

> Any interpretation by a federal court of the language of the tariffs will only speak to how those tariffs should be construed in this state. Accordingly, the reach of any such adjudication will not have federal reverberation. In addition, to the extent federal interests are implicated, the state court is quite competent to apply the language of the tariffs and is certainly well positioned to do so where, as here, the tariff language is to be construed in accord with state law.

*Pacific Gas & Elec. Co. v. Ariz. Elec. Power Coop., Inc.*, 479 F. Supp. 2d 1113, 1123 (E.D. Cal. 2007). Thus, because the district court interpreted the *force majeure* and limitation of liability clauses in accordance with Michigan law, its interpretation of these provisions could not promote national uniformity.

In addition, FERC's reasoning for declining primary jurisdiction in this case further suggests that any federal interest in national uniformity is not substantial:

> [T]he Commission (1) has no special expertise in straight-forward contractual matters, (2) there is no need for uniformity of interpretation when dealing with a contract dispute over damages resulting from termination of an agreement, and (3) the issue of whether there has been an anticipatory repudiation of the TSA is not important in relation to the Commission's regulatory responsibilities.

*Essar Steel Minn., LLC v. Great Lakes Gas Transmission Ltd. P'ship*, 2013 WL 1177519, at *4 (F.E.R.C. Mar. 21, 2013). FERC has expressed similar reasoning in other cases involving contracts filed with FERC and governed by state law. *See Portland Gen. Elec. Co.*, 1995 WL 394547, at *4 (F.E.R.C. July 5, 1995) ("An interpretation of this language by Oregon courts, under Oregon law, even if different from that of other state courts' interpretations of other contract default provisions,

will not impinge significantly on the operations of public utilities across the Nation.").

Certainly, whether FERC exercises its primary jurisdiction should not be conflated with whether federal question jurisdiction exists. However, we find FERC's reasoning persuasive for finding that the federal interests here are not "substantial" within the meaning of *Grable*. This case presents no "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. Indeed, this case is far more similar to the "fact-bound and situation-specific" dispute over the application of contract terms in *Empire Healthchoice* than it is to the interpretation of a federal statute posed in *Grable*. *See Empire Healthchoice*, 547 U.S. at 701. Therefore, we conclude that the substantiality requirement of *Grable* is not satisfied here.

B.

Furthermore, we conclude that *Grable*'s fourth requirement also is not satisfied. Specifically, allowing federal courts to exercise exclusive jurisdiction over this type of claim would disturb a "congressionally approved balance of federal and state judicial responsibilities." *See Grable*, 545 U.S. at 314.

As the district court correctly determined, once a federal court determines that a claim "arises under" the NGA or any regulation thereunder—either because the NGA creates the cause of action or because the *Grable* test is satisfied—the exclusive jurisdiction clause of the NGA requires that the federal court retain exclusive jurisdiction of the claim. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1572 (2016) ("[A]n action 'brought to enforce' a duty or liability created by a federal statute is nothing more (and nothing less) than an action 'arising under' that law."); 15 U.S.C. § 717u (granting federal courts exclusive jurisdiction over all claims "brought to enforce any liability or duty created by, or to enjoin any

-13-

violation of, [the NGA] or any rule, regulation, or order thereunder"). Despite the fact that exercising federal question jurisdiction would inevitably result in exclusive jurisdiction, the district court concluded that resolving this issue in federal court would not disrupt the federal-state balance approved by Congress because "the language of the NGA does not evidence Congress's intent to keep these types of cases out of federal court." *Great Lakes*, 103 F. Supp. 3d at 1025. Rather, the district court held that the presence of the exclusive jurisdiction clause was "evidence of the fact that Congress affirmatively sought to provide a federal forum for certain cases, such as this one." *Id.*

On the contrary, the mere presence of the exclusive jurisdiction clause does not indicate that Congress intended to provide a federal forum for breach of contract cases. First, "the combination of no federal cause of action and no preemption of state remedies" serves as an "important clue" suggesting a congressionally approved balance *disfavoring* federal involvement. *Grable*, 545 U.S. at 318. Second, the presence of the exclusive jurisdiction provision indicates that Congress did *not* intend this particular type of case to end up in federal court, because exclusive jurisdiction over breach of contract cases would result in the very disturbance that *Grable* warned against. Specifically, exclusive federal jurisdiction over these cases would preclude state courts from adjudicating contract disputes governed by their own state law. As the Supreme Court has emphasized, "when a statute mandates, rather than permits, federal jurisdiction—thus depriving state courts of all ability to adjudicate certain claims—our reluctance to endorse broad readings, if anything, grows stronger." *Manning*, 136 S. Ct. at 1573 (citation and quotation marks omitted). Our reluctance is especially heightened in this case because "the interpretation of a contract is ordinarily a matter of state law to which we defer." *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (citation omitted). Therefore, we decline to read broadly the NGA's exclusive jurisdiction provision to evidence a congressional intent to provide an exclusively federal forum for traditional state law breach of contract claims.

Because the federal issues in this case are not substantial to the federal system as a whole and because the district court could not exercise federal question jurisdiction without disrupting the balance of state and federal responsibilities, we conclude that the district court lacked subject matter jurisdiction. Accordingly, we do not reach the remaining issues.

## V.

We recognize that the district court and the parties expended significant time, effort, and expense before the issue of subject matter jurisdiction was raised. However, we have a duty to determine the existence of subject matter jurisdiction at any time, even on appeal. *See Arnold v. Wood*, 238 F.3d 992, 994 (8th Cir. 2001). For the foregoing reasons, the judgment of the district court is vacated, and we remand with instructions to dismiss for lack of jurisdiction.

_____