Filed 10/21/24  Carson Hybrid Energy Storage v. Turlock Irrigation District CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CARSON HYBRID ENERGY STORAGE, LLC., et al., | F087073 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV-23-001227) |
| v. | |
| TURLOCK IRRIGATION DISTRICT, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Stanislaus County.  Sonny S. Sandhu, Judge.

Duran and Cedillo and Manuel Duran for Plaintiffs and Appellants.

Duncan and Allen and Jon R. Stickman for Defendant and Respondent.

-ooOoo-

Plaintiffs Carson Hybrid Energy Storage, LLC and CMD Carson, LLC (collectively "Carson") appeal the trial court's order dismissing Carson's complaint with prejudice after the court sustained defendant Turlock Irrigation District's ("Turlock") demurrer because it found that Carson's complaint was preempted by an interlocutory order emanating from a related administrative proceeding before the Federal Energy Regulatory Commission (FERC) under the Federal Power Act (FPA).  (See 16 U.S.C.

§§ 824 et seq.)  On appeal, Carson argues the court erred in sustaining Turlock's demurrer.  We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

### Carson's Complaint

On March 9, 2023, Carson filed a complaint in Stanislaus County alleging, in relevant part, the following:

Turlock operates as a public corporation that provides electricity services to ratepayers and other utilities.  Relevant here, Turlock provides "non-discriminatory transmission access" to other utilities, meaning Turlock "awards interconnection requests and transmission services on a first come first serve equal basis, without regard to project owner."  Carson, a private company, needed to interconnect a future energy storage project with Turlock's transmission system to sell energy to the electrical grid.

On January 7, 2021, the parties entered an Interconnection System Impact Study Agreement (ISISA).  In return for Carson's deposit and funding, Turlock would issue a report consistent with the ISISA's parameters within six to nine months detailing the projected impact of Carson's project on Turlock's system, estimating Carson's costs to upgrade any necessary equipment to secure interconnection, and projecting the time to complete interconnection.  Beyond Carson's deposit, Turlock would invoice Carson for any necessary work, provide those invoices to Carson, and reconcile any discrepancies upon the report's completion.

Turlock also placed Carson's project in its interconnection queue.  Turlock informed Carson only one project stood ahead of Carson's project, but Carson later came to believe that Turlock impermissibly placed its own competing energy storage project ahead of Carson's project in the queue.

Over the next two years, various disputes regarding the ISISA arose forming the basis for Carson's allegations that Turlock breached the ISISA by:  (1) failing to utilize the correct modeling parameters specified in the ISISA; (2) utilizing modeling parameters

2.

not provided in the ISISA; (3) failing to provide analysis and models required by the ISISA; (4) failing to provide information required by Section 5.0 of the ISISA; (5) impermissibly delaying the interconnection study for various improper reasons; (6) refusing to provide invoices; (7) refusing to permit Carson to arrange relationships with third-party vendors pursuant to Section 7.1 of the ISISA; (8) failing to communicate with the California Independent System Operator (CAISO) as required by Attachment A to the ISISA; and (9) threatening to withdraw Carson's interconnection request unless Carson provided an additional $150,000 within 30 days for Turlock to proceed with the next study, the Interconnection Facilities Study (IFS), where Turlock has not, according to Carson, completed the first study under the ISISA.

Carson requested that the trial court award injunctive relief to prevent Turlock from (1) enforcing the deadline to fund the $150,000 for the IFS until Turlock completes the deficient ISISA report, (2) removing Carson's project from the interconnection queue, and (3) considering its own competing project before Carson's project. Carson also requested that the court order Turlock to specifically perform the obligations Carson contended Turlock failed to perform.

### FERC Proceedings

On February 10, 2023, plaintiff CMD Carson, LLC (CMD) filed an application with the FERC under sections 210 and 211 (16 U.S.C. §§ 824i, 824j) of the FPA for an order directing Turlock to provide interconnection and transmission services for Carson's project. The factual allegations in CMD's application were substantially the same as those in its complaint.[1] However, CMD did not request that FERC issue the relief requested in Carson's complaint.

---

[1] Absent from our record, among other things, is CMD's application and Turlock's protest and motion. However, FERC's May 22, 2023, order summarizes both.

3.

Turlock filed, in relevant part, a protest and motion to hold the FERC proceedings in abeyance pending the completion of the study process, upgrades, and new facilities. Turlock argued that ordering interconnection prior to the completion of the above would not meet the "requirements of sections 210, 211, 212, and 213 of the FPA and section 2.20 of the Commission's Regulations." Turlock further argued a premature order would "jeopardize [the] reliability of Turlock's system and compel ratepayers to subsidize provision of service to [CMD] because Turlock would have to pay for upgrades to avoid exposing its system to reliability risks." Finally, Turlock contended that, absent the agreements required for the full study and interconnection process, Turlock could not ensure the project would conform to Turlock's operating criteria, and, without an IRS Private Letter Ruling, "would jeopardize the tax-exempt status of the bonds that Turlock used to finance its transmission system."

With respect to Turlock's request for abeyance, CMD argued that all issues need not be resolved prior to a preliminary order requiring interconnection. CMD admitted it was "willing to agree to and pay for further studies, but Carson would like those agreements to be made under the Commission's oversight." Otherwise, Carson opposed Turlock's protest and request for abeyance.

On May 22, 2023, FERC granted Turlock's request to hold the proceedings in abeyance "pending the necessary interconnection and transmission studies." Specifically, it found "that an abeyance is warranted because Turlock has stated that it is ready and willing to provide service and that it will require a section 211 order to protect the tax-exempt status of its bonds. An abeyance will provide the parties time to continue moving through Turlock's procedures by completing the necessary studies and identifying needed upgrades. Turlock has indicated that an [IFS], a Transmission System Impact Study, and a Transmission Facilities Study still need to be completed." (Fn. omitted.)

FERC indicated that it "require[d] additional information" to issue a final order. To obtain that information, "Carson must sign the study agreements and pay for further

4.

studies and Turlock must complete those studies to understand the impacts of the Project on its electric system and to identify any needed system upgrades to ensure that the operation of the Project will not result in any violations of the applicable reliability criteria. We find that this information is necessary before we can issue a proposed order in this case. Without this information, we cannot determine whether the reliability of Turlock's system will be unreasonably impaired by an order directing Turlock to provide transmission service to Carson." (Fn. omitted.)

In other words, FERC required the "completion of and payment for interconnection and transmission studies, including interconnection-related system impact studies and facilities studies as well as transmissions related studies" before it could issue a proposed interconnection order.

FERC also ordered the parties to "submit an informational status report (either jointly or independently) regarding these study agreements and the related progress on study completion to the Commission within 60 days of the date of this order, explaining whether they have successfully entered the necessary agreements and the estimated timeline for completion of the remaining interconnection and transmission studies. At that time, the Commission may take further action."

**Federal Proceedings**

Turlock removed Carson's complaint to the United States District Court, Eastern District of California, claiming that Carson's suit was " 'nominally posited on state law breach of contract claims' " but is actually " 'dependent on whether [Turlock's] conduct conformed to the requirements of FPA Sections 210 and 212 (16 U.S.C. § 824i, 824k) and FERC orders and regulations issued under these provisions.' " (*Carson Hybrid Energy Storage, LLC v. Turlock Irrigation District* (E.D. Cal. June 21, 2023, No. 23-CV-460-JLT-EPG) 2023 WL 4104003, p. *4 (*Carson*).) However, the district court granted Carson's motion to remand the case to the state court. (*Id*., at p. *7.)

The district court explained that Carson's "FERC petition does not allege that [Turlock] violated the FPA; it merely asks FERC to issue an interconnection order pursuant to its power under FPA Sections 210 and 211 because Carson's negotiations with [Turlock] were not ultimately fruitful." (*Carson*, *supra*, 2023 WL 4104003, at p. 5.) Further, the dispute in this case did not arise under the terms of a "FERC-approved tariff," thus, "[b]ecause FERC-approved tariffs are 'regulations' under the FPA, federal law" would apply if there was a FERC-approved tariff in play, but, since "there is no such tariff or other comparable rule or regulation underpinning Carson's claims," Carson's "breach of contract claim is [not] federally created." (*Ibid*.)

The court further determined that application of federal law was not necessary to the resolution of Carson's complaint because some of Carson's theories did not depend on any construction of federal law, nor was an adjudication of what constitutes "Good Utility Practice" a substantial question in this case. (*Carson*, *supra*, at pp. *6–*7.) "[Turlock] has not demonstrated how FERC has the same comprehensive control over this dispute as in [other cases] when [Turlock] admits plainly that it does not maintain a FERC tariff and is exempt from FERC's rate regulation." (*Id*., at p. *7.)

**Turlock's Demurrer**

On July 13, 2023, Turlock demurred to Carson's complaint on the grounds that it failed to state facts sufficient to support any cause of action. (Code Civ. Proc., § 430.10, subd. (e).) Specifically, Turlock argued the injunctive relief sought by Carson conflicted with the FERC's May 22, 2023, order, which Turlock interpreted as directing Carson to pay for, and proceed with, the remaining studies, including the IFS. Turlock also argued that Carson's request for specific performance conflicted with FERC's purported directive that the parties continue the study process and report to FERC.

Carson filed an opposition arguing that (1) the May 22, 2023, order could not preempt its state lawsuit because it was not a federal law or federal regulation, (2) FERC's jurisdiction under the FPA does not include Carson's lawsuit, (3) there was

6.

no conflict between FERC's order and the relief Carson requested in its complaint, and (4) that 16 U.S.C. section 825i does not govern Carson's breach of contract claim. Carson did not request leave to amend.

On August 23, 2023, the trial court sustained Turlock's demurrer without leave to amend. The court held that Carson's breach of contract claim was "pre-empted by the Federal Energy Regulatory Commission's federal statutory jurisdiction over transmission of electrical energy and over interconnectional agreements emanating from the [FPA]." Further, it held that Carson's complaint was "specifically preempted" by its conflict with FERC's May 22, 2023, order.

On August 28, 2023, the trial court issued an order, upon the parties' stipulation, dismissing the case with prejudice.[2] Carson timely appealed on October 27, 2023.

## DISCUSSION

### I.      Legal Principles and Standard of Review

"We review de novo an order sustaining a demurrer. [Citation.] Likewise, whether state law is federally preempted is a 'pure question of law' that we independently review. [Citation.] In deciding whether a demurrer was properly sustained, "[w]e are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." (*Center for Environmental Health v. Perrigo Co.* (2023) 89 Cal.App.5th 1, 16.) "We 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Gallivan v. AT&T Corp.* (2004) 124 Cal.App.4th 1377, 1381.) "A judgment based on a dismissal must be affirmed if any

---

[2] Though there appears to be no judgment issued in this case, and an order sustaining a demurrer without leave to amend is interlocutory and not appealable (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 780), an exception exists where the trial court issues a written, signed order dismissing an action. (Code Civ. Proc., § 581d.) The order of dismissal constitutes a judgment and is "effective for all purposes." (*Ibid*.; *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1233–1234.)

7.

of the grounds for demurrer raised by the defendant is well-taken and disposes of the complaint." (*Ibid*.)

"The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' " (*Mutual Pharmaceutical Co. v. Bartlett* (2013) 570 U.S. 472, 479, quoting U.S. Const., art. VI, cl. 2.) Thus, "[w]hen a state statute, administrative rule, or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect." (*Geier v. American Honda Motor Co., Inc.* (2000) 529 U.S. 861, 894 (dis. opn. of Stevens, J.).)

Among the versions of implied preemption, conflict preemption primarily occurs in two situations: (1) "where it is impossible for a private party to comply with both state and federal law" and (2) "where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 372–373.)

Field preemption applies where federal law is so comprehensive that we may reasonably infer that Congress excluded state regulation, even if there is an "absence of express pre-emptive language." (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 79–80; *Kemp v. Superior Court.* (2022) 86 Cal.App.5th 981, 997.) In other words, the federal regulatory scheme must be " 'so pervasive that there is a reasonable inference Congress intended to dominate the field…' " (*Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 316, fn. 17.)

## II.     Analysis

Carson argues that FERC lacks jurisdiction to enforce the ISISA and award the relief sought by Carson's complaint, and that the relief Carson requests is consistent, and not in conflict with, FERC's authority in the administrative proceedings. As a result,

Carson's complaint, and the relief requested therein, is not preempted. We believe Carson is correct.

FERC has determined that it "may not enforce a non-public utility's tariff, including [a non-public utility's] unfiled [agreement]." (*THSI bn, LLC* (Oct. 19, 2023) 185 FERC ¶ 61,032 [2023 WL 6933472] at p. *13 (*THSI bn*).) Essentially, the FPA empowers FERC to govern the interstate sale and transmission of electricity (16 U.S.C. § 824(a)), but FERC's authority is bounded. FERC's jurisdiction is greatest over "public utilities," which are, in fact, private sellers of electricity. (*In re Electric Refund Cases* (2010) 184 Cal.App.4th 1490, 1496.) They must file with FERC a "tariff" that lays out, in relevant part, the procedures and *agreements*, including an ISISA, similar in terms to the one in this case, necessary for an applicant to interconnect with that public utility. (18 C.F.R. §§ 35.1(a), 35.10a(a); Standardization of Generator Interconnection Agreements and Procedures (July 24, 2003) 104 FERC ¶ 61103 [2003 WL 21725988], Appendix 3 [containing *pro forma* ISISA].)

Once approved by FERC, an agreement like the ISISA "is part of a FERC-filed tariff," taking on "the same legal force as federal regulation." (*Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc.* (8th Cir. 2009) 561 F.3d 904, 913; see 18 C.F.R. § 35.2(c)(1) [defining "tariff" in part as "all classifications, practices, rules, or regulations which in any manner affect or relate to" electric service].)

However, "non-public" utilities, including governmental entities like Turlock, are largely exempt from FERC's jurisdiction (16 U.S.C. § 824(f); *In re Electric Refund Cases*, *supra*, 184 Cal.App.4th at p. 1496), except that, as relevant here, FERC may order "non-public" utilities to provide interconnection and transmission services to an applicant. (16 U.S.C. §§ 796(22)–(23), 824i(a)(1), 824j(a), 824j-1(a)–(b).) Nothing in the FPA or implementing regulations requires "non-public" utilities to file a tariff or agreement with FERC. In this case, Turlock is a "non-public" utility, and, according to the record, did not file a tariff containing the ISISA, or the ISISA itself, with FERC.

As applied to this case, FERC "may not enforce [non-public utility Turlock's] tariff, including [Turlock's] unfiled [ISISA]." (*THSI bn, supra,* 185 FERC ¶ 61,032 [2023 WL 6933472] at p. *13.) Put differently, FERC is unauthorized to enforce the ISISA or otherwise award the relief sought by Carson in its complaint.

This outcome accords with other limitations on the FPA's ambit. Consistent with FERC's decision in *THSI bn*, federal courts have consistently found similar limits to their jurisdiction under the FPA. (See 16 U.S.C. § 825i.) Where an agreement is not filed with FERC or part of a FERC-filed tariff, or even if it references a FERC-filed tariff but resolution requires no substantial interpretation of that tariff, federal courts lack jurisdiction over state-law claims related to that agreement. (See *Pacific Gas and Elec. Co. v. Arizona Elec. Power Coop., Inc.* (E.D. Cal. 2007) 479 F.Supp.2d 1113, 1125 (*Pacific Gas*).)

In *Pacific Gas*, the court granted a motion to dismiss for lack of subject matter jurisdiction on the grounds that the plaintiffs sought "to enforce a private contract between private parties which will afford relief only if the contract terms, from wherever drawn, are found to have been breached." (*Pacific Gas*, *supra*, 479 F.Supp.2d at p. 1125.) Thus, even though the agreement in that case explicitly *incorporated* a FERC-filed tariff, the mere reference to federal standards or a tariff did not create federal jurisdiction, especially given "the very language at issue, the contract terms provided by the federal tariffs, [was] to be expressly construed in accord with California law rather than federal law…." (*Id.*, at p. 1123.)

Other courts have reached similar conclusions. (See *Great Lakes Gas Transmission Limited Partnership v. Essar Steel Minnesota LLC* (8th Cir. 2016) 843 F.3d 325, 330–332 [though contract to pay monthly fees at a rate filed with FERC included terms of a FERC tariff, the agreement was not filed with FERC, and thus was unrelated to a FERC tariff and void of federal jurisdiction]; *Monforte Exploration, L.L.C. v. ANR Pipeline Co.* (S.D. Tex. Jan. 7, 2010, No. H-09-3395) 2010 WL 143712, at pp. *1, *4 [no

federal jurisdiction where defendant issued an order consistent with FERC tariff but contradicting private contract for transportation and storage of natural gas because no allegation that defendant breached the FERC tariff]; *Florida Gas Transmission Co., LLC v. Bay Gas Storage Co., Ltd.* (S.D. Tex. Feb. 11, 2009, No. H-08-3472) 2009 WL 361592, at p. *4 [transportation services agreement for natural gas existed "apart from the filed tariffs," so no federal jurisdiction existed].)

For this reason, both Turlock and the trial court improperly relied upon *Southern Cal. Edison. Co. v. Public Utilities Com.* (2004) 121 Cal.App.4th 1303 (*SCE*). Though that court did remark that FERC has "authority to order interconnection to the grid and to specify the terms of the interconnection," that case involved "public utilities" under the FPA, and the court was not tasked with exploring the FPA's limitations over "non-public" entities like Turlock in that case. (*Id.*, at pp. 1311-1312.) *SCE* is inapplicable here, and to apply it as Turlock suggests contravenes the numerous federal decisions, and FERC's own decisional authority, holding that breach of contract disputes arising from unfiled tariffs or agreements are not subject to federal jurisdiction.

Here, there is no FERC-filed tariff or agreement at issue. Even if Carson's complaint references FPA standards, such as the meaning of "Good Utility Practice," Carson's lawsuit remains, fundamentally, "a private contract between private parties which will afford relief only if the contract terms, from wherever drawn, are found to have been breached." (*Pacific Gas*, *supra*, 479 F.Supp.2d at p. 1125.) Further, the ISISA specified that any disputes as to its "performance" would be "governed by the laws of the State of California, without regard to its conflicts of law principles." Therefore, consistent with the Eastern District's conclusion that no federal jurisdiction existed in this

case, we find that FERC lacks jurisdiction to enforce the ISISA because the dispute in this case does not involve any federal law or federal regulation.**3**

Furthermore, even if FERC could conceivably hear the ISISA, FERC may not award the relief that may be available to Carson in state court. "It is well-settled that the [FPA] does not confer on [FERC] the authority to award damages or reparations for breach of contract." (*Consol. Edison Co. of New York, Inc., Complainant v. Public Service Electric and Gas Company* (June 11, 2003) 103 FERC ¶ 63,047, 65,114 [2023 WL 21353905], at p. *10; see also *Nez Perce Tribe v. Idaho Power Co.* (D.Idaho 1994) 847 F.Supp. 791, 803 [FERC lacks "jurisdiction or authority to make an award of monetary damages…."]; *Kelly v. Public Utility Dist. No. 2* (E.D.Wash. June 8, 2011) 2011 WL 2294166 at *7 ["FERC can not award retrospective damages for breach of contract"]; *South Carolina Public Service Authority v. F.E.R.C.* (D.C. Cir. 1988) 850 F.2d 788, 792 [FERC lacks authority to impose liability for property damage as a condition for license renewal under FPA obligating FERC to determine if a project is safe before issuing license].)

Though Carson seeks specific performance, not damages, for Turlock's alleged breach of the ISISA, Carson may yet seek damages instead of specific performance, such as by amending its prayer for relief. (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 905 (*Mycogen Corp.*) [damages unavailable in suit for specific performance]; *Brandolino v. Lindsay* (1969) 269 Cal.App.2d 319, 324–325 [a plaintiff may take to trial both remedies of specific performance and of damages before electing between them].) Even if Carson elects to pursue specific performance, Carson may still recover, in equity, so-called "delay damages" for Turlock's purportedly delayed performance of the ISISA. (*Mycogen Corp., supra*, 28 Cal.4th at p. 906.)

---

**3** We do not conclude that, in every case, absence of federal question jurisdiction necessarily equates to an absence of federal regulatory authority.

12.

In summary, Turlock is a non-public utility, and the ISISA is not filed with FERC. Thus, FERC lacks jurisdiction over the ISISA. It is not tantamount to a federal regulation over which FERC would have authority under the FPA. Additionally, FERC could not award the relief available to Carson in the state-court litigation, such as damages, if Carson elected to pursue them, or "delay damages" as part of Carson's request for specific performance.

Consequently, we conclude that field preemption does not apply. In our view, the FPA does not cover this dispute over the ISISA, nor does it indicate an intent for FERC to govern private breach of contract disputes, even if related to other proceedings over which FERC has jurisdiction. Because the FPA's regulatory scheme expressly *excludes* Carson's breach of contract claim, which is governed by California law, field preemption is inapplicable.

Nor would a judgment by the trial court conflict with FERC's May 22, 2023, order or any future order FERC may issue. Turlock's argument apparently derives from a misinterpretation of (1) the FPA and (2) FERC's May 22, 2023, order.

First, Carson applied for a proposed, then final, order for interconnection and transmission with FERC. (See 16 U.S.C. §§ 824i, 824j.) However, though Turlock contends the statutory text gives FERC jurisdiction over this dispute, Turlock provides no authority to explain this interpretation. Nothing in these statutes explicitly gives FERC jurisdiction over private contractual disputes, and the cases cited above manifestly conclude the opposite. Even FERC itself held that it lacks such authority in *THSI bn*.

Second, FERC's May 22, 2023, order resolves nothing related to the ISISA. Turlock's argument that FERC somehow *implicitly* adjudicated the ISISA dispute by not mentioning it at all misconstrues the very plain language and meaning of FERC's order. Neither Carson nor Turlock asked FERC to adjudicate the ISISA. Turlock, in fact, asked FERC to hold the administrative proceedings in *abeyance*, which is exactly what FERC ordered.

13.

The FERC order only informed the parties that, to issue a proposed order for interconnection and transmission, FERC "require[d] additional information," and the parties needed to obtain that additional information. The order states that "Carson must sign the study agreements and pay for further studies and Turlock must complete those studies to understand the impacts of the Project on its electric system and to identify any needed system upgrades to ensure that the operation of the Project will not result in any violations of the applicable reliability criteria. We find that this information is necessary before we can issue a proposed order in this case. Without this information, we cannot determine whether the reliability of Turlock's system will be unreasonably impaired by an order directing Turlock to provide transmission service to Carson." (Fn. omitted.) This is not a FERC final order, but simply a recitation of information required for a proposed, and then final, order.

FERC explained that it "*anticipate*[d] that the parties will collaboratively continue through [the study process]." FERC noted it has an alternative dispute resolution process. Notably absent is any order that the parties proceed with the studies within a certain timeframe. FERC merely delayed the proceedings until Carson and Turlock, by state-court litigation, arbitration, negotiation, or some other means of dispute resolution, could complete the necessary studies. FERC explained that, pending the studies' completion, it thought "it unnecessary to close this proceeding and require Carson to file an entirely new application in the future."

In summary, FERC clearly decided that it was prudent to hold the proceedings in abeyance until the parties could resolve their disputes over the ISISA and complete the study process so that FERC could obtain the information necessary to issue a proposed, then final, order. As Turlock itself explains: "The studies must occur in a particular sequence to produce valid results. The ISIS *must* occur prior to the IFS because the IFS relies on the ISIS' findings to make its determinations." By holding the proceeding in abeyance, FERC made room for the parties to resolve their disputes over the ISISA and

14.

to come to their own agreements about the remaining studies. Because nothing will proceed until the ISIS report is completed, there is no risk that the trial court will issue relief contrary to findings in further studies or FERC's implementation of those findings in a proposed order.

Put differently, any adjudication of the ISISA's performance merely changes the information FERC *will* receive and consider when it issues a proposed, then final, order. For example, conflict may have arisen if FERC could issue a proposed order prior to the resolution of the ISISA dispute, but it cannot issue such an order prior to resolution. Because the administrative proceedings now await the parties', not FERC's, resolution of the study process, there is no likelihood that an order by the trial court will interfere with FERC's issuance of a proposed order. If the court orders Turlock to reperform the ISISA, nothing will conflict with the FERC proceedings because they are in abeyance, pending the results of the required studies.

In summary, the ISISA's performance is not governed by any federal rule or regulation, and FERC lacks jurisdiction to enforce a non-public entity's unfiled agreement. Nor would any relief granted by the trial court conflict with FERC's May 22, 2023, order, which declined to weigh in on any dispute until the parties reach a resolution on their own and complete all required studies. As such, Carson's complaint is not preempted either by a pervasive regulatory scheme or a conflict with relief that FERC could order in this case. Because no preemption applies, the court erred in sustaining Turlock's demurrer.

## DISPOSITION

The judgment is reversed. Carson to recover its costs on appeal.

15.

                                                SNAUFFER, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.

16.